## GEORGE S. ALLISON v. BUSH & SHIVELL.

**Partnership—Silent Partner—Abuse of Confidence and Trust.**

Allison and Bush, appellee, were friends, and business associates in the banking business. Bush and Shivell, appellees, were law partners, Shivell and Allison, each owned a share in a mining enterprise, and Bush was the silent interested partner in the share of each. Bush persuaded Allison to buy another share, engaged to negotiate the purchase and promised to secure it at cost, to Allison. Bush and Shivell bought a share of Bright for $500 and had it transferred to Shivell who transferred to Allison. Bush then informed Allison a share had been bought for him. Bush and Shivell then bought a share from another party, for $1500, no payment being made on same. Appellees made draft on appellant for "purchase money for the Bright interest" etc, and the $1,500 was paid. In a suit to recover $1,000, **held** that the transaction was a combined abuse of confidence and trust and appellant entitled to restitution of the difference in price of the two shares.

APPEAL FROM LOUISVILLE CHANCERY COURT.

September 26, · 1868.

OPINION OF THE COURT BY JUDGE ROBERTSON:

It seem to this court that a close analysis of the pleadings and evidence presented in the record of this case, must result in the logical and consistent and only judicial conclusion that the appellant is entitled to relief as sought by his petition. The following facts, sufficiently established, authorize this deduction:

1. The appellant and the appellee Bush were intimate friends, standing in the confidential relation of cashier and director of the same bank in the city of Louisville.

2. The appellees Bush and Shivell were associated in the confidential relation of partners in the practice of law in the same city. Shivell was the holder of a share of one-fourth in "The Riggs Tiven Mining and Manufacturing Company," and Bush, as indicated by his own testimony and other circumstances, was a dormant partner in the profits of that share and also of the share bought by Bush from Shivell for the appellant.

3. Bush persuaded the appellant to buy a share in said company, engaged to negotiate the purchase for him at as low a rate

as he could and promised to charge him only what the share should cost.

4. That, in a few days afterwards, on the 15th of June, 1865, Shivell bought from an original stock-holder, D. Bright, his share of one-fourth for the price of $500 and some indefinite costs, and between that date and the 8th of July, 1865, Bush reported the purchase of a share from Shivell for the appellant and Shivell transferred it to the appellant.

5. On the 1st of July, 1865, Shivell's brother transferred to him a share for the ostensible price of $1,500, but a credible witness testified that more than a year afterwards that brother told him that he "had received nothing and did not know that he ever would," this fact, connected with the incredibility that the appellee Shivell would give $1,500 for a share when he had about two weeks before bought one for about $500, and too when he seemed anxious to sell, authorizes the inference that the purchase from his brother was a sham, contrived as a pretext for extorting $1,500 from the appellant on the pretence that he had bought that share at that price for him, when in fact he had bought only Bright's share and owned no other except his own, which cost him nothing.

6. On the 8th of July, 1865, the appellee Bush drew on the appellant in favor of the appellee Shivell for $800 "of the purchase money for the *Bright interest* in the Rigg Tiven lead mine," and on the 1st of September, 1865, the appellee Shivell drew on the appellant in favor of the appellee Bush for "$700 balance on the one-fourth interest *purchased* for you."

7. It is almost certain that the purchase of a share for appellant was made before the 1st of July, 1865, and consequently it must have been Bright's share that was bought for him.

From these significant facts we cannot resist the conclusion that the appellees combined to make about $1,000 out of the appellant as a joint speculation on abused confidence and trust. And that the share bought for him was Bright's. Consequently they deceived the appellant and extorted from him about $1,000 more than they were entitled to demand or could justly recive.

Wherefore, the decree dismissing the appellant's petition is reversed and the cause remanded for a judgment in his favor against the appellee for $1,000 with interest from the time they received it, which amount, however, may be diminished by the

costs Bright says he was to get in addition to the $500, leave to prove which is allowed.

*Bullitt, for appellant.*

*Pirtle, for appellee.*